1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MARTINEZ, | Case No.  1:19-cv-00927-SAB |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 22, 23, 24) |
| Defendant. | |

**I.**

**INTRODUCTION**

Teresa Martinez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from lumbar degenerative disc disease, obesity, and right hip degenerative joint disease.  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 9, 11.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on December 1, 2015. (AR 104.) Plaintiff's application was initially denied on April 22, 2016, and denied upon reconsideration on July 19, 2016. (AR 125-128, 132-136.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). Plaintiff appeared for a hearing on April 3, 2018. (AR 66-87.) On July 11, 2018, the ALJ found that Plaintiff was not disabled. (AR 47-60.) The Appeals Council denied Plaintiff's request for review on May 1, 2019. (AR 1-3.)

### A.       Relevant Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing on April 3, 2018. (AR 69-83.) Plaintiff was born on September 17, 1968. (AR 69.) She is 5 foot 1 inches tall and weighs 210 to 215 pounds. (AR 69.) Plaintiff is right handed. (AR 69.)

Plaintiff is divorced and has no children under the age of eighteen. (AR 69.) She lives in a house with her significant other. (AR 70.) Plaintiff has a driver's license and drives. (AR 70.) Plaintiff completed high school and one semester of college classes. (AR 70.)

Plaintiff does not need any help showering or dressing. (AR 70.) She does household chores, prepares dinner and shops. (AR 70-71.) Plaintiff is in a women's club that meets twice a month. (AR 71.) On a normal day, she will get up and have coffee and if she is not doing chores or attending a meeting, she will switch between walking, sitting, and laying down around the house. (AR 71.) Plaintiff will spend time on her iPad, but the television is not on until about 6:00. (AR 71.) She does not nap during the day, but will lie down. (AR 71.) Plaintiff lies down two and a half to three hours a day due to pain or fatigue. (AR 82.) Plaintiff does not do anything when she has a bad day and has seven to ten bad days per month. (AR 82.) Plaintiff does not have any problems during the daytime hours due to her sleep issues. (AR 82.)

Plaintiff did data entry for Chiquita Brands Systems. (AR 72.) She did customer service, sitting at a desk, taking orders over the phone for Excelligence Discount School Supply. (AR 72.) She was an administrative assistant for Sumino Brothers Produce Company. (AR 72.) She

1  was an administrative assistant at A&A Organic Farms and then moved to a sales assistant where

2  she would input customer orders.  (AR 72.)  Plaintiff did invoicing at Taral Petroleum.  (AR72-

3  73.)

4      Plaintiff had thyroid cancer and is tired all the time from her thyroid.  (AR 73.)  She had

5  her thyroid taken out and the surgeon nicked her parathyroid which causes her to have low

6  calcium which also makes her tired.  (AR 73.)  Plaintiff takes calcium, Synthroid and vitamin D.

7  (AR 73-74.)  Plaintiff has diabetes and is doing pretty well on metformin.  (AR 74.)

8      She has really bad pain in both hips.  (AR 74.)  Plaintiff can barely walk if she does too

9  much.  (AR 74.)  She will get pain in the hip and back area when she is doing too much and is

10  not able to rest.  (AR 80.)  She has had injections, they talked about surgery, and they talked

11  about pain management but she refuses to be a zombie.  (AR 74.)  Plaintiff said that she would

12  lose weight and change things which she has.  (AR 74.)  Plaintiff is in extreme pain when she

13  stands up until she gets her legs under her.  (AR 81.)  Once she starts walking she feels a little

14  better.  (AR 81.)  She has fallen down by standing up too quickly and not having her legs under

15  her.  (AR 81.)  The pain travels down her legs and buttocks.  (AR 81.)  Her doctor is sending her

16  out to start to see what is going on.  (AR 75.)  They are starting with x-rays.  (AR 75.)

17      Plaintiff has a little pain in her lower back that comes and goes.  (AR 75.)  Her hip pain

18  and lower back pain are separate areas of pain.  (AR 75.)  Plaintiff is most uncomfortable when

19  she is sitting and most comfortable when she is laying down.  (AR 75.)  Her pain level is 8 on an

20  average day, and she rests, takes Advil and uses Salon Pas which helps a little bit.  (AR 75, 80.)

21  It will take her pain down to a five or six.  (AR 80.)  Plaintiff also uses Bio-Freeze spray.  (AR

22  75.)

23      Plaintiff is doing really well after her last gynecological surgery.  (AR 75.)  Plaintiff takes

24  Elavil for her interstitial cystitis and it helps for the most part.  (AR 76.)  She has gastrointestinal

25  issues on and off.  (AR 76.)  Plaintiff has sleep apnea and uses a CPAP machine that helps.  (AR

26  76.)  The constant fatigue is Plaintiff's biggest problem.  (AR 77.)  She had some tingling and

27  numbness in her hands and fingers that was due to her low calcium levels.  (AR 81.)  The

28  tingling and numbness has improved since they doubled her calcium.  (AR 81.)

Plaintiff is able to dust and vacuum the house before she has to sit down and rest.  (AR 77.)  Plaintiff does not know how long that takes, but it is usually about 15 to 20 minutes.  (AR 77.)  Plaintiff can lift 20 pounds.  (AR 77.)  She can sit for 20 to 30 minutes before she needs to get up.  (AR 77.)  If Plaintiff is just standing, then she can stand for about 20 minutes.  (AR 77.)  She is able to walk for thirty minutes.  (AR 77.)  Plaintiff sometimes has problems putting her shoes on in the morning.  (AR 78.)  She tries not to climb stairs and will go very slowly.  (AR 78.)  She has dizziness once or twice a month which will last a half-hour or so.  (AR 78.)  She stopped taking the medication for it because it was making her kind of angry.  (AR 78.)  Plaintiff has a little bit of a problem with depression.  (AR 78.)  She is taking medication that helps.  (AR 79.)  It is very depressing that the Social Security process has taken so long.  (AR 79.)  She moved so that removed her from a very stressful situation.  (AR 79.)  Plaintiff thinks that she is okay.  (AR 80.)

Plaintiff has been told that she spaces out when she watches television.  (AR 79.)  Plaintiff does not manage finances.  (AR 79.)  She does not have any difficulty getting along with people.  (AR 79.)

Jose L. Chaparro, a vocational expert, also testified at the hearing.  (AR 83-86.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 19, 2015.

- Plaintiff has the following severe impairments: lumbar degenerative disc disease, obesity, and right hip degenerative joint disease.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b).  Plaintiff can lift and carry 20 pounds occasionally and 10 pounds

frequently, stand and/or walk for 6 to 8 hours in an 8-hour workday, and sit for 6 to 8 hours in an 8-hour workday.  Plaintiff can occasionally stoop, crouch, crawl, climb, and kneel.  She can frequently balance.

- Plaintiff is capable of performing past relevant work as an administrative clerk, billing clerk, order clerk, and a data entry clerk.  This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from June 19, 2015, through the date of this decision.

(AR 52-60.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to consider the severity of her mental impairments at Step Two of the sequential evaluation process, failing to conduct a special psychiatric review technique, providing great weight to the agency physician's residual functional capacity assessment and rejecting the treating physician's opinion, and failing to

provide clear and convincing reasons to reject Plaintiff's symptom testimony.  Plaintiff argues that she has presented a colorable claim of a severe mental impairment and the ALJ erred by finding that her mental impairments were not severe at Step Two.  Plaintiff contends that the ALJ erred because the state agency physician's residual functional capacity assessment limited her to simple repetitive tasks and her treating physician found that her severe mental limitations prevent her from sustaining the attention and concentration needed to perform simple work tasks for fifteen percent of a workday.

Defendant counters that the ALJ properly evaluated Plaintiff's mental capacity and determined that she had no mental limitations.  Defendant contends that since the ALJ found that Plaintiff did not suffer from a severe mental condition she was not required to complete a special review technique.  Since Plaintiff has not presented a colorful claim of mental impairment, Defendant argues that there is no error.  Further, Defendant argues that even if the failure to complete a special review technique was a procedural error it would be harmless because the evidence demonstrates that any mental impairment did not significantly impact Plaintiff's ability to perform work activity.  Defendant contends that the ALJ properly discounted the opinion of Plaintiff's treating physician and gave great weight to the opinion of the agency physicians.  Finally, Defendant argues that the ALJ gave legally sufficient reasons to discount Plaintiff's symptom testimony.

Plaintiff replies that the consultative examiner found that Plaintiff suffered from a severely impaired memory and limited her to simple repetitive tasks.  Based on this examination, the agency physician found that Plaintiff suffered from a severe organic mental disorder and was limited to simple repetitive tasks.  Plaintiff argues that this alone is sufficient to pass the more than minimal evidence required at step two.  Further, Plaintiff contends that the defendant fails to address the evidence from her treating provider that she would be off task fifteen percent of the workday.

Plaintiff also argues that the ALJ erred by failing to give controlling weight to the opinion of her long term treating physician who determined that her physical impairments limited her to less than sedentary work.  Finally, Plaintiff contends that the ALJ failed to explain

1  how Plaintiff's limited daily activities translate into an ability to sustain full time work.

2  **A.      Whether the ALJ Erred In Evaluating Plaintiff's Mental Impairment**

3  1.   Step Two

4  "An impairment or combination of impairments can be found 'not severe' only if the
5  evidence establishes a slight abnormality that has 'no more than a minimal effect on an
6  individual[']s ability to work.' " Smolen, 80 F.3d at 1290 (citations omitted).  Step two is a "de
7  minimis screening devise to dispose of groundless claims." Id.  An ALJ can only find that
8  claimant's impairments or combination of impairments are not severe when his conclusion is
9  clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)
10  (quoting S.S.R. 85-28).  In considering an impairment or combination of impairments, the ALJ
11  must consider the claimant's subjective symptoms in determining their severity. Smolen, 80
12  F.3d at 1290.

13  Symptoms are not medically determinable physical impairments and cannot by
14  themselves establish the existence of an impairment.  Titles II & Xvi: Symptoms, Medically
15  Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR
16  96-4P (S.S.A. July 2, 1996).  In order to find a claimant disabled, there must be medical signs
17  and laboratory findings demonstrating the existence of a medically determinable ailment. Id.
18  "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's
19  complaints may appear to be, the existence of a medically determinable physical or mental
20  impairment cannot be established in the absence of objective medical abnormalities; i.e., medical
21  signs and laboratory findings .... In claims in which there are no medical signs or laboratory
22  findings to substantiate the existence of a medically determinable physical or mental impairment,
23  the individual must be found not disabled at step 2 of the sequential evaluation process." Id.

24  **a.     Finding that Plaintiff's Mental Impairments are Not Severe**

25  Here, the ALJ considered the April 2016 psychological evaluation conducted by Dr.
26  Murphy.  (AR 53, 560-564.)  Plaintiff presented at the appointment without aid or assistance, but
27  demonstrated considerable pain behavior when rising out of the chair and walking.  (AR 53,
28  560.)  Her clothing was clean and neat and her overall hygiene and grooming were appropriate.

(AR 53, 560.)

Upon mental status examination, Dr. Murphy found that Plaintiff's attention was within normal limits, she was oriented times four, her memory appeared intact for short term and remote recall, her eye contact was appropriate, and her facial expression was responsive.  (AR 53, 561.)  Plaintiff's attitude was friendly and cooperative.  (AR 53, 561.)  Plaintiff could initiate and sustain a conversation.  (AR 53, 561.)  Her thoughts were clear, coherent, well organized, goal directed, and relevant to the subject at hand.  (AR 53, 561.)  She was able to handle ideas well and could identify basic similarities, differences, or absurdities.  (AR 561-562.)

Plaintiff's score on the Wechsler Adult Intelligence scale placed her at 88, Full Scale intelligence, indicative of average intelligence.  (AR 53, 562.)  Plaintiff's memory scores were found to be less than expected considering her intelligence scores.  (AR 53, 563.)  Plaintiff was able to sit for 2 hours without a break, and did not verbally or behaviorally demonstrate discomfort.  (AR 53, 563.)  Dr. Murphy noted Plaintiff's activities of daily living, work history, and education history suggested that she was functioning at the level expected but that her memory testing did not support this finding.  (AR 53-54, 563.)

While Plaintiff argues in her reply that Dr. Murphy found that Plaintiff had a severe organic mental impairment and was limited to simple routine tasks, the record demonstrates otherwise.  As the ALJ noted, Dr. Murphy's diagnosis was "R/O Major Depressive Disorder, single episode mild" and he opined that Plaintiff had a Global Assessment of Functioning ("GAF") score of 70.  (AR 53-54; 563.)  "A [GAF] score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations."  Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed. 2000)).  A GAF score of 61 to 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning.  Macias v. Colvin, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *7 (E.D. Cal. Mar. 29, 2016).  Plaintiff's GAF score indicated borderline mild symptoms.  Dr. Murphy stated that there was no psychological

1    impairment noted but Plaintiff did endorse them as part of her history.  (AR 564.)

2         "The fact that a medically determinable condition exists does not automatically mean the

3    symptoms are 'severe' or 'disabling' as defined by the Social Security regulations."  Fisher v.

4    Astrue, 788 F.Supp.2d 1219, 1227 (E.D. Wash. 2011).  In order to be severe an impairment has

5    to have more than a minimal effect on the claimant's ability to perform work activity.  Jimenez

6    v. Astrue, 641 F.Supp.2d 954, 960 (C.D. Cal. 2009); see also 20 C.F.R. § 404.1521 ("An

7    impairment or combination of impairments is not severe if it does not significantly limit your

8    physical or mental ability to do basic work activities.")  Although Dr. Murphy noted the unusual

9    memory results on testing, he opined that Plaintiff is capable of performing both simple

10   repetitive tasks and complex tasks on a regular basis.  (AR 563.)  Contrary to Plaintiff's assertion

11   that Dr. Murphy found Plaintiff to be limited to simple repetitive tasks, Dr. Murphy's opinion

12   can only be construed to have found that Plaintiff's memory impairments that were revealed on

13   testing have no effect on her ability to work and are therefore not severe.  See Moore v. Comm'r

14   of Soc. Sec., 500 F. App'x 638, 640 (9th Cir. 2012)[2] (finding no error where only evidence of

15   mental impairment was diagnosis by examining physician who nonetheless opined the claimant

16   retained "the requisite cognitive skills to employ these [skills] in the labor market should her

17   medical conditions permit.").

18        To the extent that Plaintiff argues that Dr. Cambien's opinion supports that she has

19   limitations in her attention and concentration, these are not findings that relate to any mental

20   impairment but address her pain symptoms.  Dr. Cambien did not complete any evaluation of

21   Plaintiff's alleged mental impairments.  Further, Plaintiff has not pointed to, nor does the Court

22   find, any objective findings that Plaintiff had any deficits in her attention and concentration.

23        The ALJ also considered that, in January 2018, Plaintiff's treating certified physician's

24   assistant, Shawn Luna, PAC, completed a Mental Medical Source Statement.  (AR 53, 573-574).

25   PA Luna opined Plaintiff had no deficit in any of the following categories: understanding and

26   memory, sustaining concentration, and memory, social interaction, or adaptation.  (AR 53, 573-

27

28   [2] Citation to unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

574.)  Despite finding that Plaintiff had no mental deficits, PA Luna opined she that she would be absent from work 5 days per month.  (AR 53, 547.)  The ALJ gave great weight to the portion of the opinion finding that Plaintiff has no deficit in her mental functioning, and very little weight to the portion of the opinion that Plaintiff would be absent from work for 5 days per month.  (AR 574.)  The ALJ found that the record corroborated the finding that Plaintiff is not limited in her ability to understand, concentrate, socialize, or adapt.  (AR 574.)  The ALJ considered that Plaintiff had average intelligence, she was able to sit for 2 hours during testing with Dr. Murphy without a break and did not exhibit any discomfort (AR 563), she attended dinners, monthly community group events, and tried to take part in social events whenever she was able (AR 243), and she did okay handling stress and changes in routine (AR 245).

Plaintiff also argues that her own statements are evidence that she has a severe mental impairment.  Under the Social Security regulations, an "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. § 404.1521.

Plaintiff contends that her hearing testimony indicated that she had problems paying attention, and the ALJ recognized this testimony.  (AR 57.)  But as previously discussed, the ALJ considered that Plaintiff stated that she did okay handling stress and changes in routine and did not indicate that she had any difficulties in attention or concentration, and she could follow written and spoken instructions just fine.  (AR 53-54, 244.)  The ALJ also considered Plaintiff's statements regarding her daily activities.  (AR 53.)  Plaintiff reported she is able to manage her household chores, did not need naps, watched movies and TV, baked, and played board games.  (AR 243.)  She reported that she was able to drive for one and half hours before needing to stop for a break.  (AR 242.)

Plaintiff argues that the ALJ "cherry picked" evidence regarding her limited abilities.  However, the ALJ also considered the third party function report of Plaintiff's roommate, Judy

1    Crites, completed on December 29, 2015.  (AR 59.)  Ms. Crites also stated that Plaintiff attends

2    monthly social events, is always able to pay attention, and her attention is not affected by her

3    impairments.  (AR 232, 233.)  Plaintiff gets along well with others and handles stress and

4    changes in routine well.  (AR 234.)  The record also contains a letter from Ms. Cripes, dated

5    April 30, 2017, stating that Plaintiff no longer needs to use her cane since she lost weight but at

6    times she still will have extreme pain due to period of sitting, standing, or walking.  (AR 294.)

7    But her mental state is good despite all that Plaintiff is going through.  (AR 294.)

8        The ALJ also found that the record did not demonstrate that Plaintiff had ever attended

9    mental health treatment, and during the April 3, 2018 hearing she testified that she has a little bit

10   of a problem with depression, but she is taking medication that helps.  (AR 54, 79.)  Review of

11   the medical record demonstrates that, during the relevant time period, Plaintiff consistently

12   denied having any mental health issues.  (AR 719, 725, 731, 751, 756.)  Finally, the ALJ also

13   considered that Plaintiff's mental status examinations were wholly unremarkable and this is also

14   supported by review of the medical record.  (AR 54, 514, 666, 669, 671, 688, 699, 709, 711, 714,

15   715, 719, 725, 732, 751, 757, 761, .)

16       Plaintiff argues that the opinions of the state agency consultants are sufficient meet the

17   minimal standard at step two.  The ALJ also considered and gave little weight to the opinions of

18   the State agency medical consultants, E. Aquino-Caro, M.D. and Howard Atkins, Ph.D. finding

19   them inconsistent with and unsupported by the record.  (AR 54.)  "The severity requirement

20   cannot be satisfied when medical evidence shows that the person has the ability to perform basic

21   work activities, as required in most jobs."  Fisher, 788 F.Supp.2d at 1227 (quoting S.S.R. 85–28).

22       Plaintiff relies on Webb and Young v. Colvin, No. CV-16-02264-PHX-DGC, 2017 WL

23   677167 (D. Ariz. Feb. 21, 2017), to support the argument that she presented sufficient evidence

24   to meet the de minimis standard at Step Two.  In Webb, the ALJ found that the plaintiff had not

25   demonstrated a severe impairment despite objective medical evidence in the record

26   "demonstrating back pain, hypertension, knee pain, hip pain, visual disturbances, memory loss,

27   diverticulitis, lack of sleep, difficulty performing physical tasks and lack of employment from

28   1991 through 1997."  Webb, 433 F.3d at 687.  The court found that the record was ambiguous

1   and the ALJ had the duty to further develop the record before determining that the claimant's
2   impairments were not severe.  Id.

3        In Young, the court considered the conflict between the de minimis standard at step two
4   and that the court is to affirm the decision if it is supported by substantial evidence and free of
5   legal error.  The court in Young was faced with a case in which there were multiple diagnoses of
6   mental illness, the claimant demonstrated self-destructive behavior and had been hospitalized for
7   his mental health issues.  Young, 2017 WL 677167, at *4 (D. Ariz. Feb. 21, 2017).

8        The Court finds this case to be distinguishable from both Webb and Young where there
9   was objective evidence of a severe impairment in the medical record.  Here, the ALJ considered
10  the lack of objective evidence in the medical record and determined that it did not demonstrate
11  that Plaintiff had any severe mental impairments.  Unlike Webb where the medical record was
12  incomplete, the record in this matter is voluminous.  Review of the record demonstrates that
13  there is substantial support that Plaintiff did not have any objective signs of an impairment that
14  would have more than a minimal effect on her ability to work.

15       While Plaintiff points to Dr. Cambien's report that Plaintiff had deficits in her attention
16  and concentration due to her pain symptoms, Plaintiff does not point to any objective evidence of
17  attention or concentration deficits and the Court finds none in the medical record and the ALJ
18  considered this report in addressing Plaintiff's residual functional capacity.  Further, PA Luna
19  opined that Plaintiff has no mental limitations, and Dr. Murphy opined that despite her unusual
20  memory findings she retained the ability to perform detailed tasks.  Further, the ALJ considered
21  that Plaintiff had testified that she is doing okay and that her depression is controlled with
22  medication.  Finally, unlike Webb and Young, the ALJ did find severe physical impairments and
23  continued the sequential evaluation process.

24       For the reasons discussed above, substantial evidence supports that ALJ's finding that the
25  medical record is inconsistent with the finding that Plaintiff suffered from a mental impairment
26  that impaired her ability to work.  The ALJ considered Plaintiff's statements during April 3,
27  2018 hearing that although she was slightly depressed, she was better since she had gotten out of
28  a stressful situation, is taking medication that helps, and felt like she was okay.  (AR 54, 79-80.)

1  The ALJ also considered that Plaintiff reported she did not need encouragement to complete

2  household chores (AR 241), was very involved in the community, and attended dinners with

3  friends (AR 243).  Despite the agency physicians finding that Plaintiff was more limited in her

4  mental abilities, Dr. Murphy, who conducted the consultative examination opined she has the

5  ability to handle everyday activities of daily living, such as bathing, eating meals, and

6  socializing.  She understood simple, basic instructions, and was able to complete the tasks

7  assigned to her without difficulty (AR 564.).  The ALJ gave little weight to the opinion that

8  Plaintiff was moderately limited in ability to understand and remember detailed instructions and

9  was limited to simple repetitive tasks (AR 100) because the record demonstrated that Plaintiff is

10  not limited in her mental abilities.  (AR 54.)  The ALJ noted that the record did not demonstrate

11  that she had ever attended mental health treatment, she testified her depression was controlled

12  with medication, and her mental status examinations were wholly unremarkable. (AR 54.)

13  Finally, the ALJ considered that Plaintiff reported she handled stress and changes in routine well

14  (AR 245), had no issue paying attention, and could follow written and spoken instructions just

15  fine (AR 244).  (AR 55.)

16      Other than the opinions of the state agency physicians, Plaintiff has not pointed to any

17  objective evidence that would demonstrate that her mental impairments are severe.  While the

18  state agency physician, Dr. Atkins, opined that Plaintiff had moderate limitations in her ability to

19  understand and remember detailed instructions; ability to carry out detailed instructions; and

20  ability to maintain attention and concentration for extended periods (AR 117); and was

21  moderately limited in her ability to complete a normal workday and workweek without

22  interruptions from psychologically based symptoms and to perform at a consistent pace without

23  an unreasonable number and length of rest periods (AR 118), the ALJ found that the opinions of

24  the agency physicians were inconsistent with the medical record which demonstrated that

25  Plaintiff had no mental limitations that affected her ability to perform work activity.  (AR 53-54.)

26  The ALJ is to determine credibility, resolve conflicts in testimony, and resolve ambiguities;

27  however his findings must be supported with specific and rational reasons.  Reddick v. Chater,

28  157 F.3d 715, 722 (9th Cir. 1998).  The ALJ gave specific and rational reasons that have

1   substantial support in the medical record to reject the opinions of both of the state agency

2   physicians.

3         The Court finds that the ALJ did not err in finding that Plaintiff failed to present evidence

4   to demonstrate that her mental impairments have more than a minimal effect on her ability to

5   work.

6         **b.**     **Failure to set forth special psychiatric technique**

7         Plaintiff also argues that the ALJ erred by failing to conduct a special psychiatric

8   technique at step two.  Defendant counter that the regulations do not require a special psychiatric

9   technique since the ALJ found that Plaintiff did not have a severe mental impairment.  Plaintiff

10  contends that since Plaintiff has shown a "colorable" claim of mental impairment the special

11  psychiatric technique was required and the failure to include it is reversible error.

12        "[T]he Social Security Regulations require the ALJ to complete a [Psychiatric Review

13  Technique Form] and append it to the decision, or to incorporate its mode of analysis into the

14  ALJ's finding and conclusions.  The psychiatric review technique form considers the claimant's

15  restrictions of daily living; difficulties in maintaining social functioning, difficulties in

16  maintaining concentration, persistence, and pace, and whether there are repeated episodes of

17  decompensation, each of extended duration.  The ALJ is not required to complete a psychiatric

18  review technique form to determine the severity of any mental impairment unless the claimant

19  presents a "colorable claim of mental impairment." Hayes v. Berryhill, 721 F. App'x 648, 651

20  (9th Cir. 2018) (quoting Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725-727 (9th Cir.

21  2011) (citation omitted)).  Here, the ALJ did not append the psychiatric review technique form to

22  the decision, nor did she incorporate it's mode of analysis into the findings and conclusions.

23        Ordinarily, in the Ninth Circuit, the failure to comply with this procedural rule will result

24  in remand.  Keyser, 648 F.3d at 726; but see Lemke v. Comm'r Soc. Sec. Admin., 380 F. App'x

25  599, 601 (9th Cir. 2010) ("Per the applicable post–2000 Social Security regulations, 20 C.F.R. §§

26  404.1520a(e), 416.920a(e) (2005), ALJs are no longer required to attach a specific psychiatric

27  review technique form when evaluating the severity of a claimant's mental impairments; while

28  the present regulations require adjudicators to document their findings using the special

1   technique, they give ALJs greater discretion in deciding how to publish those findings.").

2       The parties here dispute whether Plaintiff presented a colorable claim of a mental

3   impairment.   Evaluation of the evidence in the record demonstrates that Plaintiff has been

4   diagnosed with depression and has been taking medication for her depression since 2000.   (AR

5   560.)   There is no evidence in the record that Plaintiff has received any other mental health

6   treatment.   As previously discussed, Plaintiff's mental examinations by her treating physicians

7   have been normal and Mr. Luna, who regularly treated her, opined that Plaintiff had no mental

8   limitations.   (AR 573-574.)   Plaintiff testified that the medication helped her depression and she

9   thinks that she is okay.   (AR 79.)   Finally, Dr. Morgan performed a consultative mental

10  examination and testing demonstrated issues with Plaintiff's memory, but despite these test

11  results Dr. Murphy did not opine that Plaintiff had any mental limitations and found that she

12  retained the ability to perform detailed tasks.   (AR 563.)

13      While the Court is inclined to find that any failure to comply with the rule is harmless

14  error, since this matter is being remanded for the ALJ's failure to provide clear and convincing

15  reasons to reject Plaintiff's symptom testimony as discussed below, the ALJ shall address the

16  psychiatric review technique on remand.

17      **B.    Whether ALJ Erred in Evaluating Opinions of Non-Examining Agency**
        **Physician and Treating Physician Dr. Cambien**
18

19      Plaintiff contends that the ALJ erred by providing great weight to the non-examining

20  state agency physicians while rejecting the well-supported detained physical residual functional

21  capacity assessment of Dr. Cambien limiting Plaintiff to less than sedentary work.   Plaintiff

22  again argues that the ALJ cherry picked evidence from the consultative examiner rather than

23  considering the objective medical evidence as a whole.   Plaintiff states that the ALJ erroneously

24  cited to her limited activities of daily living and mischaracterized her testimony and cherry

25  picked one exhibit to determine that she was able to function well.

26      Defendant counters that the ALJ properly identified specific and legitimate reasons to

27  reject the opinion of Dr. Cambien.   Further, Defendant argues that the ALJ properly gave valid

28  reasons to give great to the opinions of the agency physicians.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)).  The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings.  Thomas, 278 F.3d at 957.

1.     Dr. Cambien's Opinion

The ALJ considered the December 2015 Physical Medical Source Statement completed by Dr. Cambien.  (AR 58.)  Dr. Cambien opined that Plaintiff could sit, stand, and walk for two hours in an 8 hour workday; would need to take unscheduled breaks every 2 hours; could rarely lift 20 pounds and occasionally lift less than 10 pounds; could rarely twist and climb ladders, and never stoop, crouch, or climb stairs.  (AR 58-59.)  He also opined that Plaintiff would be off task 15 percent of a workday and would be absent from work 4 or more days per month due to bad days.  (AR 59.)  The ALJ gave great weight to the lift and carry limitations because they were consistent with Plaintiff's testimony.  (AR 59.)  However, she gave little weight to the remainder of the opinion finding it to be overly restrictive and unsupported by the record.  (AR 59.)  The ALJ noted that Plaintiff's physical examinations were generally unremarkable and she was able to function very well.  (AR 59.)  Plaintiff cooked, cleaned, attended dinners with friends, participated in monthly community group events, and did not need encouragement for these

tasks.  (AR 59.)

Plaintiff argues that the ALJ should have provided controlling weight to the opinion of Dr. Cambien because he had treated Plaintiff since 1995.  Defendant counters that the ALJ properly identified the inconsistencies between Dr. Cambien's opinion and the other evidence in the medical record and therefore the ALJ properly discounted Dr. Cambien's opinion.  Further, the ALJ properly found that Plaintiff's daily activities were inconsistent with the limitations opined by Dr. Cambien.

A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).  "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' "  Orn, 495 F.3d at 632 (citing 20 C.F.R. § 404.1527(d)(2).  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."[3] Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Orn, 495 F.3d at 631).

The ALJ considered that Plaintiff experienced frequent hip pain.  (AR 57, 322, 698.) Plaintiff saw Dr. Chang and had a right hip x-ray on November 7, 2014 that showed trochanteric bursitis.  (AR 57, 323-324.)  On that date, Dr. Chang gave Plaintiff a cortisone injection.  (AR 57, 324.)  On December 5, 2014, Plaintiff reported that her hip pain persisted and she developed right groin pain.  (AR 57, 332.)  On January 9, 2015, Plaintiff reported to Dr. Chang that she was continuing to have hip and groin pain.  (AR 342.)  On examination she had pain with right external rotation and a positive single leg stair climb test on the right.  (AR 57, 343.)  A January 15, 2015 MRI of her right hip indicated articular cartilage thinning and subcortical reactive marrow edema in anterosuperior acetabulum suggesting early focal degenerative osteoarthritis.  (AR 57, 489.)

---

[3] Plaintiff has not argued that the ALJ did not consider the factors identified under section 404.1527(c), and the Court finds that this issue has been waived.

On February 10, 2015, Plaintiff had an injection to help relieve pain in her right hip after reporting that prolonged standing and sitting aggravated her pain.  (AR 57, 317-319.)  She reported that the injections had only relieved her pain for 1.5 hours.  (AR 57, 364, 387.)  On January 22, 2015, Dr. Chang diagnosed Plaintiff with right greater trochanteric bursitis and right hip pain and she was referred for acupuncture treatments and a second opinion.  (AR 57, 366.)

Plaintiff attended physical therapy with some progress.  (AR 57, 438-445.)  On February 19, 2015, the attending physical therapist opined that her right hip pain would slowly continue to improve.  (AR 57, 441.)  Plaintiff was referred to Stanford and on examination on April 16, 2015, presented with mild weakness and mild tenderness over the greater trochanter.  (AR 57, 451.)  Dr. Pirolo noted that the origin of Plaintiff's pain was most likely due to gynecological or urologic issues and he recommended that she seek a hernia specialist and a further evaluation of her lower back.  (AR 57-58, 452.)  Sometime during this time period, Plaintiff was diagnosed with interstitial cystitis.[4]  (AR 58, 475.)

Plaintiff was evaluated by an orthopedist, Dr. Wong, in June 2015 who noted that her symptoms were most likely secondary to a spinal condition.  (AR 58, 478.)  On April 17, 2015, Plaintiff had an x-ray of her lumbar spine that demonstrated multilevel generative arthrosis and degenerative disc disease.  (AR 48, 486.)  A June 9, 2015 lumbar spine MRI indicated L4-5 mild narrowing of the right lateral recess and abutment of the descending right L5 nerve root by a 3 mm central disc protrusion, mild right neuroforaminal narrowing, L5-S1 mild left neuroforaminal narrowing and prominent right lateral osteophytosis posterolateral displacing the right L5 nerve root along its extraforaminal course.  (AR 58, 485.)

Plaintiff had a consultative examination by Dr. Sachdeva in March 2016.  (AR 58, 551-556.)  She complained of right hip pain but reported that she was able to perform all of the housework and chores.  (AR 58, 551.)  On examination, Dr. Sachdeva found that Plaintiff had normal range of motion in all extremities, neck and back.  (AR 58, 554.)  Plaintiff's gait was within normal limits and she did not present with any tenderness.  (AR 58, )  Plaintiff had good

---

[4] The ALJ stated that Dr. Pirolo diagnosed Plaintiff with interstitial cystitis.  While Plaintiff was diagnosed with interstitial cystitis, Dr. Pirolo's notes do not contain this diagnosis.  (AR 475, 640.)

tone bilaterally with good active motion, strength was 5/5 in all extremities, and Romberg was negative.  (AR 58, 553-555.)  Dr. Sachdeva diagnosed Plaintiff with chronic right hip pain without any significant examination findings, a history of thyroid cancer, hypothyroidism, obesity, and sleep apnea.  (AR 58, 556.)  Dr. Sachdeva opined that Plaintiff did not have any functional restrictions.  (AR 58, 556.)

The ALJ also considered that PA Luna completed a physical medical source statement in January 2018, but did not provide any functional limitations.  (AR 58, 569-572.)

Plaintiff argues that the ALJ "cherry picked" two pages of examination findings from the consultative examination in finding that the examination results were generally unremarkable rather than examining the record as a whole.  Plaintiff contends that this is not a specific and legitimate reason to reject Dr. Cambien's opinion.  However, Plaintiff fails to point to any examination findings that would conflict with those of Dr. Sachdeva which indicate that Plaintiff had continued to improve as the physical therapist had opined.

Plaintiff was seen by Dr. Pirolo on April 16, 2015.  (AR 451-452.)  He opined that it was quite unlikely that Plaintiff's pain was emerging from her hip joint.  (AR 452.)  Plaintiff had mild weakness and mild tenderness over the greater trochanter, but this did not reproduce her pain.  (AR 452.)  Dr. Pirolo opined that Plaintiff's pain could be gynecologic or urologic in origin or could be femoral or undiagnosed herniation or possibly coming from her lower back.  (AR 452.)

Plaintiff was seen on April 30, 2015 and in May 2015 and examination was unremarkable.  (AR 458, 468, 510, 661, 765.)  Plaintiff saw Dr. Hershey on June 3, 2015 and was noted to be using a cane and had a moderately antalgic gait on the right.  (AR 482.)  When she was lying supine she had no leg length discrepancy.  (AR 482.)  Straight leg raise was negative on the right.  (AR 482.)  Right hip range of motion was mildly irritable with external rotation but her range of motion is within normal limits from about 15° internal rotation to 50° external rotation with 90° flexion on the right.  (AR 482.)  There is no palpable mass, induration, or erythema.  (AR 482.)  Plaintiff had minimal or mild tenderness around the right greater trochanter.  (AR 482.)  Dr. Hershey advised Plaintiff that her complaints of hip pain were out of

proportion to the findings on her hip studies.  (AR 482.)  Dr. Hershey opined that since Plaintiff had injections on two occasions that did not significantly improve her pain even temporarily suggest that the process is not involving the hip joint at all.  (AR 482-483.)

On June 11, 2015, Plaintiff was seen by Dr. Wong complaining of constant sharp, dull aching throbbing pain in her right hip.  (AR 475.)  Plaintiff was noted to be walking with a normal non-antalgic heel to toe gait.  (AR 476.)  She exhibited diffuse tenderness involving the entire right buttock.  (AR 477.)  Examination on the great trochanter, SI joint and buttock was noted to be pain free bilaterally.  (AR 478.)  Plaintiff had no muscle spasms and paraspinal muscle tone was normal.  (AR 477.)  Plaintiff had normal pain free range of motion and was able to bend with her fingers less than five inches from the floor.  (AR 477.)  Muscle testing was 5/5 bilaterally.  (AR 477.)  Waddell sign, straight leg raise, and cross straight leg raise were negative.  (AR 477.)  Plaintiff's hips were supple with full range of motion without significant pain.  (AR 477.)  Heel toe walk was normal.  (AR 477.)  Dr. Wong noted that Plaintiff expressed increased pain in the right anterior groin with passive simultaneous flexion and internal rotation of the right hip.  (AR 477.)  She did not have specific tenderness of the right sciatic notch and pain was not localized to the PSIS region which was not tender.  (AR 477.)  Dr. Wong told Plaintiff that, based on the fact that she her right groin pain is exacerbated by passive range of motion of her right hip, her pain is not secondary to any spinal condition and he suspected it was from her hip.  (AR 478.)  He opined that her symptoms are not consistent with SI joint pain either.  (AR 478.)

Plaintiff was seen on June 12, 2015 and had an epidural injection.  (AR 494.)  Examination finding was positive for lumbar tenderness with no weakness or atrophy.  (AR 494.)

Plaintiff was seen again on July 6, 2015 and had another epidural injection.  (AR 493.)  Examination revealed some tenderness to the lower lumbar spine, but no weakness.  (AR 493.)

Plaintiff returned for a follow up on October 30, 2015.  (AR 492.)  Examination findings are unremarkable.  (AR 492.)

Plaintiff was seen in November 2015 with unremarkable examination findings.  (AR 514, 761.)

On December 28, 2015, Plaintiff was seen and there are no musculoskeletal findings

noted. (AR 544.) Dr. Cambien completed a physical medical source statement. (AR 519.) Dr. Cambien stated that Plaintiff had been diagnosed with pelvic and lumbar pain and with thyroid cancer. (AR 519.) Plaintiff's symptoms were persistent pain in her pelvis and legs and lower abdominal pain. (AR 519.) This was confirmed by persistent pain in her lower abdomen. (AR 519.) Dr. Cambien opined that Plaintiff was able to sit or stand/walk about 2 hours in an 8 hour workday; would need unscheduled break every 2 hours. (AR 519.) Plaintiff could occasionally lift less than 10 pounds, rarely lift 20 pounds; and rarely twist or climb ladders; never stoop, crouch/squat, or climb stairs. (AR 519.) Plaintiff was likely to have good and bad days and would be off task 15 percent of the day because her symptoms would interfere with her attention and concentration. (AR 519.) Plaintiff would miss more than four days of work per month as a result of her symptoms or treatment. (AR 519.)

Plaintiff was seen on January 27, 2016, to discuss disability and the record notes positive pain that radiates to the lower right abdomen and pelvis. (AR 543.)

On March 28, 2016, Plaintiff had a consultative examination by Dr. Sachdeva. (AR 551-556.) Plaintiff reported that she had chronic right hip pain for the past two years. (AR 551.) She stated that the hip pain occurred all day and can be limiting at times. (AR 551.) Plaintiff reported that she lived with her partner and did all the housework and chores as her partner was employed fulltime. (AR 551.) Plaintiff denied any other symptoms. (AR 551.)

On examination, Dr. Sachdeva noted no tenderness to palpation in the midline or paraspinal areas. (AR 554.) Straight leg raising was negative at 90 degrees. (AR 554.) Laseque's sign was negative and there was no muscle spasm. (AR 554.) Range of motion testing was within normal limits for the back and upper and lower extremities, bilaterally. (AR 554-555.) Plaintiff had normal pulses and good tone bilaterally with good active motion. (AR 555.) Strength was 5/5 in all extremities. (AR 555.) Sensory was grossly intact, and reflexes were normal and symmetric bilaterally at 2+ with no clonus. (AR 555.) Finger to nose examination was intact and Romberg was negative. (AR 555.) Cranial nerves were grossly intact. (AR 555.) Plaintiff's gait was within normal limits. (AR 555.)

Dr. Sachdeva diagnosed Plaintiff with chronic right hip pain without any significant

exam findings; history of thyroid cancer; hypothyroid; obesity; and sleep apnea.  (AR 556.)  Dr. Sachdeva opined that Plaintiff did not have any functional restrictions based solely on her medical issues.  (AR 556.)

Plaintiff was seen by PA Lemus on May 20, 2016, and August 25, 2016, and reported that she was having no musculoskeletal symptoms.  (AR 751, 756.)  The record reflects that her gait was intact and she had full range of motion in all joints with no deformity erythema or tenderness.  (AR 751, 757.)

On January 9, 2017, Plaintiff had a total abdominal hysterectomy.  (AR 634-641.)

Plaintiff saw PA Lemus on February 13, 2017; March 3, 2017; June 15, 2017; and August 8, 2017 and reported no musculoskeletal symptoms.   (AR 715, 719, 725, 731.) Examination findings reflect full range of motion in all joints with an intact or a good broad based gait.  (AR 713, 715, 725, 732.)  There was no deformity, erythema or tenderness on musculoskeletal examination.   (AR 725, 732.)   Plaintiff had normal motor and sensatory examination.  (AR 725, 732.)

On September 21, 2017, Plaintiff was seen by PA Luna complaining of positional vertigo and denied having musculoskeletal pain.  (AR 714.)  Plaintiff was found to have full active range of motion in both the upper and lower extremities with strength of 5/5 throughout the extremities.  (AR 714.)  There was no weakness or deformity.  (AR 714)  Plaintiff had a good broad based gait.  (AR 714.)

Plaintiff was seen on October 12, 2017, for dizzy spells stating that she was feeling better but was now having headaches.  (AR 711.)  Plaintiff denied musculoskeletal pain.  (AR 711.) She had full active range of motion in the bilateral upper and lower extremities with strength of 5/5 throughout.  (AR 711.)  There was no weakness or deformities.  (AR 711.)

On January 12, 2017, PA Luna saw Plaintiff who reported chronic right hip pain.  (AR 698.)  Her examination findings remained the same.  (AR 699.)  PA Luna completed a medical source statement.  (AR 569.)

Plaintiff was seen on January 22, 2018, to have disability paperwork completed and denied musculoskeletal pain.  (AR 692.)  Examination findings remained the same.  (AR 692.)

On November 9, 2017, Plaintiff was seen for a sore throat and denied musculoskeletal pain. (AR 709.) She returned on November 21, 2017, and again denied musculoskeletal pain. (AR 706.) He had full active range of motion in the bilateral upper and lower extremities with strength of 5/5 throughout. (AR 707.) Plaintiff had a good broad based gait. (AR 707.)

On February 1, 2018, and February 12, 2018, Plaintiff was seen for her ears, throat and a headache and denied musculoskeletal pain. (AR 688, 690.) Examinations findings remained the same. (AR 688, 691.) On February 3, 2018, Plaintiff was seen by Dr. Kumar for a new patient examination reporting tinging in her hands and feet and fatigue that lasted all day. (AR 654.) She reported that her pain was 0/10 and examination results are normal. (AR 654-655.)

Substantial evidence supports the ALJ's findings that Dr. Cambien's opinion was overly restrictive given that her physical examinations were generally unremarkable and Plaintiff was able to function very well. (AR 58.) Although Plaintiff did have some objective findings of mild pain, after she attended physical therapy her physical therapist opined that she would slowly improve and the later record demonstrates that she consistently denied any musculoskeletal pain and physical examination revealed normal strength and range of motion with a good broad based gait and no abnormal findings. The ALJ properly discounted Dr. Cambien's opinion because it was unsupported by the clinical findings. Thomas, 278 F.3d at 957.

Plaintiff also argues that the ALJ erred in finding that her daily activities conflict with Dr. Cambien's opinion by mischaracterizing her testimony and cherry picking one exhibit to opine that Plaintiff was able to function very well. However, in the opinion, the ALJ considered Plaintiff's December 29, 2015 function report. (AR 57, 239-247.) Plaintiff reported that she was able to care for her personal needs. (AR 240.) She prepared meals for herself every day and there had been no change since her conditions began. (AR 241.) Although she needed breaks, Plaintiff was able to do all the household chores. (AR 241.) She got out of the house and was able to drive or ride in the car, needing to take a break after one and one half hours. (AR 242.) Plaintiff went shopping weekly for groceries, household items and clothing. (AR 242.) Plaintiff is involved in community groups and monthly events, and goes out to dinner with friends. (AR 243.) Plaintiff had been prescribed a cane that she used as needed. (AR 245.)

1    The ALJ also considered the December 29, 2015 third party function report of Judy
2  Crites.  (AR 59, 228-235.)  Ms. Crites stated that Plaintiff was unable to stand or sit for long
3  periods of time (AR 228), but she was able to take care of her personal needs, other than shaving
4  her legs (AR 229), and prepared simple dinners for herself daily as she had prior to her
5  conditions arising (AR 230.)  Plaintiff was able to perform basic housecleaning chores such as
6  vacuuming although she might rest in between.  (AR 230.)  Plaintiff goes out of the house at
7  least every other day and shops for groceries and household items once a week.  (AR 231.)
8  Plaintiff attends monthly social events and dinners with friends.  (AR 232.)

9    On March 28, 2016, Plaintiff reported to Dr. Sachdeva that she did all the household
10 chores because her partner was working full time.  (AR 58, 551.)

11    Dr. Murphy noted at the April 7, 2016 psychological evaluation that Plaintiff was able to
12 sit for two hours without needing a break and did not demonstrate any discomfort.  (AR 54, 563.)

13    The ALJ's finding that Dr. Cambien's opinion is overly restrictive based on Plaintiff's
14 ability to function well is supported by substantial evidence in the record.  For example, Dr.
15 Cambien opined that Plaintiff was only able to sit for two hours in an eight hour workday.  But
16 Plaintiff stated that she was able to drive or ride in a car for one and one half hours before
17 needing a break and Dr. Sachdeva noted that Plaintiff was able to sit for two hours during his
18 examination without demonstrating any discomfort.  Further, Dr. Cambien opined that Plaintiff
19 could rarely twist and never crouch or squat which is inconsistent with her ability to complete all
20 household chores.  Finally, Dr. Cambien's opinion conflicts with Plaintiff's testimony at the
21 hearing.  While he opined that Plaintiff can rarely lift 20 pounds and can never climb stairs,
22 Plaintiff testified that she can carry 20 pounds and that she can climb stairs although she does so
23 slowly.  (AR 77, 78.)  The ALJ is to consider the consistency with other evidence in the record in
24 determining the weight to be provided to a doctor's opinion.  Magallanes v. Bowen, 881 F.2d
25 747, 754 (9th Cir. 1989); Orn, 495 F.3d at 634.

26    The ALJ provided specific and legitimate reasons to reject the opinion of Dr. Cambien
27 that are supported by substantial evidence in the record.

28 / / /

25

2.   <u>Agency Physicians</u>

Plaintiff argues that the ALJ erred in giving great weight to the opinions of the agency physicians.  The ALJ considered that Dr. Jackson reviewed the medical record and on April 22, 2016, opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in 8 hour day; sit 6 hours in 8 hour day; push pull unlimited; and may require 1-2 minute stretch break from sitting each hour.  (AR 58, 98-99.)  Plaintiff can occasionally climb ramps/stairs, ladders/ropes/scaffolds; stoop, kneel, crouch and crawl; and frequently balance; and recommended a light RFC with stand/walk 6 hours; sit 6 hours with time allowed for standard breaks and a 1-2 minute stretch break from sitting each hour  (AR 99).  On July 12, 2016, on reconsideration, Dr. Mohan considered the medical record and affirmed Dr. Jackson's opinion.  (AR 58, 116.)  The ALJ gave great weight to these opinions because they are consistent with and supported by the medical record.  (AR 58.)

Specifically, the ALJ noted that the lift and carry limitations were consistent with Plaintiff's testimony that she was able to carry 20 pounds.  (AR 58, 77.)  Although the objective evidence demonstrated that Plaintiff had degenerative osteoarthritis in her hips and an impairment in her lumbar spine, the evidence showed she had no difficulty in bathing, dressing or caring for her hair, could use the toilet and complete all household chores.  (AR 58, 240, 241.)  For the reasons discussed above, the ALJ's finding that the state agency physician opinions are consistent with Plaintiff's ability to perform her personal care and complete all household chores is supported by substantial evidence in the record.  (AR 228-235, 239-247, 551.)

Additionally, the ALJ considered that on physical examination Plaintiff had normal range of motion in all extremities, her gait was within normal limits, and she had a negative Romberg.  (AR 58, 553-555.)  As discussed above, in addition to Dr. Sachdeva's examination results, there is substantial evidence in the record to support the finding that Plaintiff generally had normal musculoskeletal examinations.  (AR 688-762.)

The Court finds that the reasons that the ALJ provided to give great weight to the opinions of the agency physicians have substantial support in the medical record.  The ALJ did not err in the weight provided to the agency physician opinions.

### C.      Plaintiff's Symptom Testimony

Finally, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject her symptom testimony.  "An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment."  Orn, 495 F.3d at 635 (internal punctuation and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015).  "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.

The ALJ considered Plaintiff's testimony at the April 3, 2018 hearing and her December 2015 function report.  (AR 56.)

[T]he claimant testified she lived in a home with her significant other.  She had her

driver's license and drove.  The claimant graduated high school and attended some college courses.  The claimant could shower and dress independently, did household chores, and cooked dinner.  She shopped and attended a women's club twice a month.  She did not take naps, but laid down throughout the day, which was a comfortable position for her, and spent time on her iPad.  She had thyroid cancer and had received treatment, but she was frequently fatigued.  The claimant took calcium, vitamin D, and took a diabetic medication but was doing well with diabetes.  She experienced bilateral hip pain, which caused difficulty walking when she overexerted herself, but had lost some weight to avoid a pain management therapy.  The claimant experienced intermittent lower back pain, for which she used Biofreeze spray for relief.  She was doing well after undergoing gynecological procedures.  She had some gastrointestinal issues off and on, but was doing okay.  The claimant had sleep apnea and she was using the CPAP, which was working.  The claimant could dust and vacuum for about 15-20 minutes, and then would take a rest.  She could lift and carry 20 pounds, walk for 30 minutes, sit for 20-30 minutes before she would need to get up, and could stand for 20 minutes before she would need to rest.  She avoided climbing stairs, but climbed them slowly when she did.  She felt dizzy 1-2 times per month, lasting 30 minutes, but had stopped taking her medication.  The claimant was also slightly depressed, but was better since she had moved and gotten out of a stressful situation, and felt like she was okay but still took anti-depressants which were helpful.  On an average, she experienced 7-10 days a month, in which she had difficulty walking, experienced fatigue, and was not able to do much around the house.  She occasionally spaced out when watching TV.  The claimant did not have problems getting along with people (Hearing Transcript).

In December 2015, the claimant completed an Adult Function Report (Exhibit 4E).  She reported her ability to work was limited by her inability to sit or stand for long periods (Exhibit 4E, p. 4).  The claimant had no problem dressing, bathing, caring for her hair, feeding herself, or using the toilet, but did have some trouble shaving her legs (Exhibit 4E, p. 5).  She cooked every day, her cooking habits had not changed since her conditions began, she did all household chores with rest periods, and did not need encouragement doing these tasks (Exhibit 4E, p. 6).  The claimant drove but needed to move around every 1.5 hours, showed in stores and by computer, and handled her own finances (Exhibit 4E, p. 7).  The claimant watched movies and TV, baked, and played board games.  She attended dinners, monthly community group events, and tried to take part in social events whenever she was able (Exhibit 4E, p. 8).  The claimant could walk 15-20 minutes before needing to rest, had no issue paying attention, and could follow written and spoken instructions just fine (Exhibit 4E, p. 9).  She got along with authority figures, had never been fired or laid off from a job, and did okay handling stress and changes in routine (Exhibit 4E, p. 10).

(AR 56-57.)

The ALJ found that Plaintiff medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence for the reasons explained in the decision.  (AR 57.)  The ALJ stated that Plaintiff's statements were inconsistent with the discussion that followed.  (AR 57.)  The discussion that followed only addressed the medical evidence.

Defendant argues that the ALJ noted inconsistencies in Plaintiff's statements within the opinion itself and her ability to perform her daily activities, do all household chores, and attend social functions and dinners with friends.  While the Court agrees that there is ample evidence in the opinion and in the medical record that would support an adverse credibility finding, the Court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible.  Brown-Hunter, 806 F.3d at 492.  In addressing Plaintiff's testimony, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  The ALJ did not do so in her opinion.  The ALJ only provided the medical evidence as a reason to reject Plaintiff's symptom testimony.

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999).  However, subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ did not provide any reasons for rejecting Plaintiff's testimony other than the inconsistency with the medical evidence.

Accordingly, the Court finds that the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's pain testimony.

### D.    Remand for Further Proceedings

The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  This applies equally in Social Security cases.  Treichler, 775 F.3d at

1099.  Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.' "  Garrison, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)).  The decision to remand for benefits is discretionary.  Treichler, 775 F.3d at 1100.  In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits.  Garrison, 759 F.3d at 1019.

In this instance, the ALJ has failed to provide legally sufficient reasons to reject Plaintiff's symptom testimony.  "[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony."  Brown-Hunter, 806 F.3d at 495 (quoting Treichler, 775 F.3d at 1106).  Although the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony, the Court finds that evaluation of the record creates serious doubt that Plaintiff is in fact disabled.  Specifically, based on the above discussion, Plaintiff's treating physical therapist indicated that she would continue to slowly recover and the record indicates that Plaintiff has done so.  While the record through the middle of 2015 does demonstrate some objective findings that would support Plaintiff's allegations of pain, she received two epidural injections during the summer of 2015 and her later evaluations demonstrate normal examination findings and the medical record notes that she has continually denied having musculoskeletal pain.

Further, while Plaintiff testified at the hearing that she is only able to sit for twenty minutes, she also stated that she was able to ride or drive in the car for one and one half hours before needing a break.  Significantly, Dr. Murphy also noted that Plaintiff was able to sit for two hours during his examination without exhibiting any discomfort.  These inconsistencies in the record tend to cast doubt on Plaintiff's symptom testimony.

Therefore, the Court finds that this matter shall be remanded for further proceedings so that the ALJ can further consider Plaintiff's symptom testimony and to complete a psychiatric review technique.

/ / /

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's pain testimony.   Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Teresa Martinez and against Defendant Commissioner of Social Security.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **June 5, 2020**

UNITED STATES MAGISTRATE JUDGE